IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA * | |
| * | |
| vs.  * | Case No. 23-cr-0431 (JEB) |
| * | |
| FRANCIS BIONDO, * | |
|     Defendant * | |
| * | |

ooOoo

**FRANCIS BIONDO'S SENTENCING MEMORANDUM**

    Francis Biondo, by his undersigned counsel, hereby respectfully moves this Honorable Court to impose a sentence of 12-months probation. Such a sentence is "sufficient, but not greater than necessary" to impose just punishment, deterrence, protect the public and provide needed rehabilitative services as required by 18 U.S.C. § 3533(a). It also avoids unwarranted disparity and takes into consideration Mr. Biondo's life-long history of service to his country and to others. The sentence also is the "appropriate sentence" for someone like Mr. Biondo, with no prior convictions whose sentencing range is in Zone A (Offense Level 2 and CH I) with an advisory range of 0 to 6 months. *See* U.S.S.G. § 5C1.1, comment. (n.10) ("a sentence other than a sentence of imprisonment, in accordance with USSG §5C1.1(b) or (c)(3) is generally appropriate" for a defendant in Zone A.

**Introduction**

    Mr. Biondo has pleaded guilty to a misdemeanor offense, 18 U.S.C. § 1752(a)(1) arising out of his presence in the Capitol on January 6, 2021. He has zero Criminal History points. His Total Offense Level is 2 and his Criminal History is I, with a sentencing range of 0 to 6 months in Zone A. There are no disputes over the guidelines calculation.

**I.    Mr. Biondo's Unblemished Record and Life-Long Record of Work and Service to His Country and his Community Warrant a Sentence of Probation.**

Mr. Biondo is a combat veteran, having served two tours of duty in the Middle East with the 82nd Airborne. He is divorced and the father of two children. He has been gainfully employed his entire life. He devotes his life to service to other veterans. He is active in the Combat Veterans Motorcycle Club ("CVMA"), a charity organization that helps veterans cope with medical and psychological problems and other needs.[1] Most recently, he and his fellow veterans assisted another veteran who was recovering from a heart attack. They simply went to his home, mowed his lawn, cleaned his house and kept him company. As many veterans, he himself has various medical and psychological conditions directly related to his service for which he receives treatment through the Veterans Administration. PSR at ¶¶ 71-77.

Attached as exhibits are several letters from his adult children, his sister and other friends. They all speak about the wonderful and honorable person that Mr. Biondo is.

**II.   Mr. Biondo Did Not Engage in Violence or Destroy Any Property on January 6 and Prevented Others From Doing So**

On January 6, Mr. Biondo attended the political rally, listened to the speeches and thereafter with thousands of other persons walked to the Capitol, while holding one corner of an American flag. He did not destroy any property nor did he assault any person. Indeed, during his short time inside

---

[1] CVMA is "an Association of Combat Veterans from all branches of the United States Armed Forces who ride motorcycles as a hobby. As a registered 501(c)(19) veterans' charity, our mission is to support and protect those who have defended our country and our freedoms. Our focus is to provide assistance and help to individual veterans, veteran care facilities, other veteran organizations and registered charities. We sponsor and participate in many veteran-related motorcycle (and other) charity events each year, and as a non-profit organization, donate to various veteran causes." at https://www.combatvet.us/

the Capitol, Mr. Biondo "stepped in to prevent others from physically attacking the officers."[2] Mr. Biondo's comportment since January 6 and throughout his life show that he will not recidivate and this situation is an aberrant event in his life. Indeed, after a life-time of being a law abiding citizen, Mr. Biondo has been devastated by the instant prosecution, and is deeply remorseful. The conviction is particularly hurtful to him because he takes pride in his military service, when he put his life on the line to preserve the rights and privileges of those of us who have never served.

### III.     Post-Offense Conduct Also Merits a Sentence of Probation

Imprisonment here is unnecessary because Mr. Biondo's conduct throughout his life and even on January 6 when he stepped in to stop others from assaulting officers show that he will not commit another offense. *See Pepper v. United States*, 562 U.S. 476, 491 (2011) (district court may consider evidence of the defendant's post-offense conduct and may rely on such evidence to support a downward variance).

> In assessing ... deterrence, protection of the public, and rehabilitation, 18 U.S.C. § 3553(a)(2)(B)(C) & (D), there would seem to be no better evidence than a defendant's post-incarceration conduct". Post[offense] rehabilitation may also critically inform a sentencing judge's overarching duty under § 3553(a) to "impose a sentence sufficient, but not greater than necessary" to comply with the sentencing purposes set forth in § 3553(a)(2).
> . . .
> Pepper's post[offense] conduct also sheds light on the likelihood that he will engage in future criminal conduct, a central factor that district courts must assess when imposing sentence. *See* §§ 3553(a)(2)(B)-(C); *Gall v. United States*, 552 U.S. 38, 59 (2007) ("Gall's self-motivated rehabilitation ... lends strong support to the conclusion that imprisonment was not necessary to deter Gall from engaging in future criminal conduct or to protect the public from his future criminal acts" (citing §§ 3553(a)(2)(B)-(C))).

---

[2] Statement of Offense (ECF 20) at 4, ¶ 11.

**E.     Unwarranted Disparity**

Imposing a term of imprisonment in this case as the government requests is unwarranted. Indeed, the person with whom he traveled to DC on January 6 and whom he kept from assaulting officers was sentenced to 36 months probation by Judge Walton.  Following are other January 6 and non-January 6 cases that show that a sentence of imprisonment would violate 18 U.S.C. § 3555(a)(6) which directs the Court to avoid unwarranted sentencing disparity.

1.     *United States v.  Colon* **- Sentence of Probation.**

Colon was a member of the Kansas City chapter of the Proud Boys.  He brought a gun with him to DC, although he did not carry it with him while at the Capitol.  However, he engaged in pre-planning chats where some members of the group discussed violence.  On January 6, he "purchased a modified axe handle that he could use as a walking stick and weapon," carried a pocket knife, tactical vest, tactical gloves, boots, and a helmet.[3]

> A "group of rioters that included Colon and other Kansas City Proud Boys chased police officers out of the Crypt and into a passageway or lobby leading to the Capitol Visitor Center. While the police were fleeing, several feet in front of Colon, a large metal door began lowering from the ceiling. The officers retreated behind the descending gate and tried to help it close while rioters tried to keep it open. In front of Colon, rioters threw a trash can at the officers and attempted to slide pieces of furniture into the door's path.
>
> Before long, the officers yielded, and the crowd (with Colon just a few people back) continued moving forward. Although the officers had all fled, the door was still activated and continued to close. But members of the Kansas City Proud Boys group, with Colon gesturing in support, worked together to drag a movable podium into the path of the door, replacing a smaller chair that another rioter had placed there:  Shortly thereafter, Colon himself placed a chair into the path of another door in the area.

---

[3]  *Colon*, Gov Sent'g Memo (ECF 276 at 3)

*Id*. at 6-7.

    **2.**  ***United States v. Sandra Parker,* No. 21-cr-028 (APM) - Probation.**

  Mrs. Parker was charged and convicted after trial in a multi-count indictment brought against the Oath Keepers that included civil disorder and the 1512 obstruction charge. She entered the Capitol with the Oath Keeper "stack" through the same doors that Mrs. Borgerding entered. The civil disorder count was predicated on her surge with a group of Oath Keepers and others in a hallway that led to the Senate chambers. Judge Mehta sentenced her to 60-months probation. Judgment (ECF 1062). Judge Mehta also sentenced another one of the Oath Keepers, convicted in that same trial on the same multiple offenses to 60-months of probation with the first 18-months on home detention, ***United States v. William Issacs***. Judgment (ECF 1054).

    **3.**  ***United States v. Hart*, No. 21-cr-540 (DLF)**

  Judge Friedrich sentenced Mr. Hart to 36-months of probation, with 45 days of home detention with electronic monitoring on a 231 conviction. Judgment (ECF 74). In addition to participating in one of the first breaches of the fences surrounding the Capitol at 12:45 pm, he encouraged others to move forward. He exited the Capitol at 3:06 pm, after having spent 21 minutes inside.

> Hart, wearing a red hood with a black hat and sweatshirt with a "Q" on it, positioned himself with the other rioters against the fencing, as shown in open-source video2. Amidst screams of profanity towards officers and politicians, rioters on the end of that barricade opposite Hart *violently engaged with U.S. Capitol Police officers and began rocking and shoving the barricades*. Hart joined the other rioters and pushed one such barricade with his hands and his foot, helping to overrun the security checkpoint.
> . . .
> The rioters, including Hart, breached the barricades, hopping over the downed fence and forcing officers to retreat. Hart then joined a multitude of other rioters in rushing onto the restricted area of Capitol

> grounds. The mob now had direct access to the Capitol building Despite encountering additional lines of police officers and pepper spray, Hart continued with the mob to overrun law enforcement and move closer to the Capitol building. While doing so, he took videos of the riot, using his mobile device and a selfie-stick, as captured in open-source video.  In that video, he also appeared to be wearing a bright orange speaker around his neck.  Having breached the police lines, Hart then encouraged other rioters to move towards the Capitol.
>
> . . .
>
> While in the Rotunda, Hart stopped and smoked marijuana; the event was captured in an Instagram video posted on an account called "brotunda" on or about January 6, 2021 and was captioned, "There were many Brotunda's under the Rotunda that day…"
>
> . . .
>
> Hart was interviewed by law enforcement. During the interview he attempted to minimize his involvement, suggesting he did not push the barricade and that he was not, in fact, encouraging other rioters to get closer to the Capitol by waving them forward. Instead, he stated he was waving in an attempt to tell rioters to get down from scaffolding.

Gov Sent'g Memo (ECF 69) at 4-12 (Images omitted).

### 4. Non-January 6 Cases

In four different cases arising out of political demonstrations involving physical assaults on police officers, the United States Attorney for the District of Columbia dismissed two of the cases outright; another case was dismissed on a deferred prosecution agreement after a 6-month probationary period.  In a fourth case, involving a violent assault on a police officer, the defendant was sentenced to 4-months in prison.  All the cases were prosecuted by the United States Attorney's Office in the District of Columbia but charged in Superior Court.

In *United States v. Ruben Camacho*, No. 2023 CMD 008424, the US Attorney entered into a 6-month deferred prosecution agreement with a person who "slammed MPD Officer Beaman against the wall, then struck the Officer in the right side of her face with a loose grip fist, causing the Officer and Camacho to fall to the ground." *Id.* Statement of charges; Deferred prosecution

agreement in case docket. The incident arose out of a violent demonstration outside the DNC in November 2023, Congressional leaders where meeting inside.[4]

In *United States v. Alanna Rogers*, Case No 2020-CF3-006970 charges were dismissed in a case where the defendant was charged with felony assault on an MPD police officer while armed for, among other things, "throwing a firework at police officers, burning the trousers of one police official, during a declared riot that took place on August 30 and carried over to August 31, 2020." USAO-DC press release No. 20-107, 9/11/2020; *see also* Gerstein Affidavit docketed in the case. On September 30, 2020, the charges were dismissed. *See* Nolle Prosequi Notice docketed in the Superior Court case file. The riots that took place in the summer of 2020 were described by the DC Circuit as "peaceful demonstrations *coincided with incidents of rioting, vandalism, looting, and arson*." *Tinius v. Choi*, 77 F.4th 691, 696 (D.C. Cir. 2023), *cert. denied*, 144 S. Ct. 815 (2024) Several curfew orders that the Mayor entered stated that "Vandals smashed windows in Northeast DC, upper Northwest DC stretching to Georgetown, and caused extensive damage in the Golden Triangle Business Improvement District, Downtown DC Business Improvement District, and Mount Vernon Triangle Community Improvement District." Another Curfew Order stated that "[r]ioting and looting affected the operations of District government agencies." *Id.*

In *United States v. Sermon*, Case No. 2020 CMD 006677, the defendant was charged with assaulting a police officer who was "holding a police line" near Senator Rand Paul; "the defendant punched an MPD officer in the left side of his face. The affidon avit further reports that the officer sustained a laceration and severe swelling above his left eye, was transported to the hospital, and

---

[4] Video shows clash outside DNC headquarters that forced lawmakers to evacuate at https://www.cnn.com/videos/politics/2023/11/16/dnc-protest-headquarters-israel-gaza-ctm-vpx.cnn

received stitches." near Senator Rand Paul.[5] The charges were dismissed on January 27, 2022. Gov Notice of Nolle Prosequi, filed in case docket.

In *United States v. Dane Powell*, No. 2017 CF2 001405, the defendant was sentenced to 4 months in prison for throwing a brick at a police officer, breaking windows of various businesses, being possession of a hammer, and covering his face to avoid detection arising out of riots that took place near the Inauguration of President Trump in January 2017.

> According to a factual proffer signed by the defendant, on January 20, 2017, Powell joined together with more than 200 other people in and around Logan Circle in Washington, D.C. The group formed a "black bloc" in which individual defendants wore black or dark colored clothing, gloves, scarves, sunglasses, ski masks, gas masks, goggles, helmets, hoodies, and other face-concealing and face-protecting items to conceal their identities in an effort to prevent law enforcement from being able to identify the individual perpetrators of violence or property damage. Some of the members of the black bloc were armed with hammers, crowbars, wooden sticks, and other weapons. Powell was among those dressed in black, and had in his possession a gas ask. Powell also attempted to conceal his face with a mask. In addition, *Powell was in possession of a hammer, and a heavy wooden stick with a flag attached to it. As part of the proffer, he admitted being part of a group of rioters who moved approximately 16 blocks over a period of more than 30 minutes. He also admitted that he participated in breaking windows at two businesses and throwing a brick, large rock, or piece of concrete at uniformed law enforcemen to officers during the riot.*

USAO Press Release No. 17-144, 7/7/2017 (emphasis added).

---

[5] "Man Charged for Assault on Metropolitan Police Officer Who Was in Proximity to Confrontation of Senator Rand Paul". USAO Press Release, No. 20-122, 9/2/2020.

## CONCLUSION

For all these reasons, the Court should impose a sentence of probation to comply with the requirement that a sentence be "sufficient, but not greater than necessary" to comply with the purposes of sentencing – just punishment, protect the public, deter, and provide rehabilitative services.

Respectfully submitted,

/s/ *Carmen D. Hernandez*
**Carmen D. Hernandez**
Bar No. MD 03366
7166 Mink Hollow Rd
Highland, MD 20777
240-472-3391
chernan7@aol.com

## CERTIFICATE OF SERVICE

I hereby certify that the instant notice was served on all counsel of record 26th day of August, 2024 on all counsel of record via ECF.

/s/ *Carmen D. Hernandez*
**Carmen D. Hernandez**